I concur with the result in this case, however disagree with a few findings that have been found by the other Commissioners. Therefore, I file this separate, concurring opinion.
First, I disagree with the finding that plaintiff suffered an injury to his head (Finding of Fact No. 20, Conclusion of Law No. 1). The evidence is undisputed that plaintiff fell through a ceiling to a concrete floor while installing telephone/computer cable. No loss of consciousness was initially noted and there was no apparent indication of a head or brain injury. Because of left arm, leg, and rib injuries plaintiff was taken to the hospital and held over night. At the hospital there was no evidence of a brain injury. Plaintiff had a MRI of the brain and it was negative for a head injury. Plaintiff has also had neuro-psych testing which was negative for a brain injury. Except for unfounded comments in medical records that plaintiff had or may have had a brain injury (many of which appear to have been created by plaintiff's wife, there is no evidence of a brain injury. These comments are not supported by the ambulance, hospital, and other medical records. A finding of a head injury is not necessary to explain plaintiff's condition, and I decline from concluding that plaintiff sustained a head injury with resulting damage to the brain when such an injury is not recorded in the objective medical evidence.
Second, I do not find that evidence offered by plaintiff's wife is credible. In particular, I am not persuaded by the uncontested declaration of legal incompetence that was orchestrated by Mrs. Irby. Plaintiff's wife clearly has a self-interest in having plaintiff declared incompetent. Further, this declaration was based on information supplied to health care providers by Mrs. Irby, and plaintiff's doctors did not observe any behavior tending to verify that information even though plaintiff was in psychiatric confinement and under heightened observation. Mrs. Irby predicated plaintiff's alleged incompetence on inappropriate behavior consisting of alleged improper sexual conduct and masturbation. The majority opinion, and the development of the medical evidence in this case, however, ignores the fact that plaintiff was experiencing unexplained abnormal, excessive physical growth prior to his October 1999 injury and that plaintiff was receiving hormone (testosterone) replacement therapy for a high estrogen level and low testosterone level before this injury. The pre-existing abnormalities to plaintiff's endocrine system and the induction of testosterone may explain plaintiff's alleged aggressive and unusual behavior. Or, because the alleged behavior was not confirmed by the health care providers, it may not have existed to the extreme level suggested by plaintiff's wife.
Despite my disagreement concerning the status of a brain injury and the competence of evidence derived from plaintiff's wife, I find that the greater weight of the competent evidence suggests that plaintiff's pre-existing psychological condition, including depression, anxiety, and apnea, was aggravated as a result of the physical injuries he sustained in October 1999 and the resulting physical disability that he sustained from the treatment for these injuries. The evidence shows that plaintiff's wife is disabled and that his son has psychological problems. Despite suffering from depression and anxiety, prior to his October injury plaintiff received strength from his ability to work and support his family. Plaintiff's self-worth was tarnished when he was physically taken off from work for surgery for his physical injuries. This fact appears to have aggravated plaintiff's pre-existing psychological condition, and plaintiff has not recovered from this deficit. I agree with the findings of Dr. Flowers, a neuropsychologist, who stated:
 "[W]e see no evidence of cognitive dysfunction consistent with a traumatic brain injury. Unusual behavior and memory complaints appear to predate the accident, although they may have been exacerbated by the stress brought on by it."
As a result, I find that plaintiff has been disabled as a result of an aggravation to his pre-existing psychological condition. I do not agree that the plaintiff's physicians who have relied on misinformation from Mrs. Irby are entitled to greater weight.
I file this separate opinion because I find no benefit in perpetuating disability if it is not necessary. If my analysis of the evidence presented in this claim is correct, it may be prudent to have the health care providers evaluate plaintiff's condition with a direction toward returning him to some form of gainful activity to rebuild his self-esteem. I do not find that continuation of the unfounded belief that plaintiff has a brain injury will assist in his treatment and allow him to become more functional. To the contrary, this belief, with the inability to treat a brain injury that cannot be identified, can cause plaintiff and others to believe that his condition cannot be improved. Contrary, to the findings of the majority, plaintiff's inappropriate behavior appears to coincide with an increase in his testosterone treatment and the loss of his self-esteem when he was not able to work while receiving treatment for his physical injuries. Treatment which includes these factors may allow this man to gain some form of self-respect and obtain greater enjoyment of life, if not the ability to return to some form of gainful employment. It is disturbing to think that plaintiff will lose this potential opportunity because non-physician Commissioners found that plaintiff has a unknown, and thereby untreatable, brain injury.
 S/______________ RENE C. RIGGSBEE COMMISSIONER